**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EDWARD STEWART,

                      Plaintiff,

     v.

DAVID FELDMAN, *et al.*,

                      Defendants.

Civil Action No.

2:20-cv-00776-JMG

**DEFENDANTS' SUR REPLY TO PLAINTIFF'S RESPONSE TO**

**MOTION TO DISMISS FRAUD COUNT**

I.      **ARGUMENT**

        **A. PLAINTIFF/RESPONDENT HAS NOT COMPLIED WITH THE RULE 9(b) REQUIREMENT TO PLEAD FRAUD WITH PARTICULARITY.**

Under the law in this District, in order for plaintiff to satisfy Rule 9(b)'s particularity

requirement, the allegations of a Complaint must:

> …[G]o well beyond Rule 8's threshold of plausibility. A mere plausible inference of illegality is not enough. Instead, "a relator must 'establish a "strong inference" that the false claims were submitted.' " *United States ex rel. Silver v. Omnicare, Inc.*, 903 F.3d 78, 92 (3d Cir. 2018) (quoting *Foglia v. Renal Ventures Mgmt.*, 754 F.3d 153, 158 (3d Cir. 2014)).

Rule 9(b)'s particularity requirement requires a plaintiff to allege " 'all of the essential

factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where, and how of the events at issue.' " *Majestic Blue Fisheries*, 812 F.3d at 307 (quoting *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). U.S. ex rel. Bookwalter v. UPMC, 946 F.3d 162, 176 (3d Cir. 2019)

It is evident that Plaintiff's Amended Complaint still fails to meet this tough requirement. In sum, all we know is that Plaintiff avers that he requested Defendant to sign a written agreement evidencing their alleged prior oral agreement and Defendant never did.  Plaintiff also avers that Defendant created entities after the oral agreement through which he operated similar business ventures for other fighting events.  This is all Plaintiff does with respect to the how and when requirements.   With respect to how, Plaintiff has not plead how those alleged facts meet the elements of actionable  fraud.  With respect to when; these things, as alleged by Plaintiff, occurred **after** the oral agreement was allegedly reached and therefore it is impossible for them to meet the elements of fraud.

> "The elements of a common-law claim for fraudulent misrepresentation in Pennsylvania are as follows: (1) a misrepresentation; (2) the fraudulent utterance thereof; (3) an intention by the maker that the recipient will be induced to act; (4) justifiable reliance by the recipient on the misrepresentation; and (5) damage to the recipient as a proximate result of the reliance. *Fort Washington Resources, Inc., v. Tannen,* 858 F.Supp. 455, 459 (E.D.Pa.1994) (citing *Browne v. Maxfield,* 663 F.Supp. 1193, 1202 (E.D.Pa.1987))."
> *Coleman v. Sears, Roebuck & Co.,* 319 F. Supp. 2d 544, 550 (W.D. Pa. 2003)

Plaintiff has not alleged facts of (1) misrepresentation, nor (2) utterance thereof, or (4) justifiable reliance.  As such, Rule 9(b) has not been met.

B.  **THE PURPORTED CREATION OF NEW BUSINESSES AFTER 2012 CANNOT POSSIBLY ESTABLISH THE BASIS FOR MISREPRESENTATION, UTTERANCE, OR JUSTIFIABLE RELIANCE FOR FRAUD SINCE THESE FACTS AS AVERRED OCCURRED AFTER THE ORAL AGREEMENT**.

Paragraphs 17 and 18 of the Amended Complaint aver that an agreement took place between Feldman, Gunn, and Stewart for them to operate  a business for the production of bare knuckle boxing events.  Nothing in the paragraphs regarding the discussions between the parties even remotely touches on what was said or done by Defendant Feldman in 2012 to induce Stewart into agreeing to begin a partnership.

Plaintiff admits that at least $227,000.00 was sent to Defendant prior to September of 2014 (Paragraphs 22, 23, 24, 30, 31, 32, 33, 34) and this was before any of the "other businesses" that Plaintiff alleges Defendant created for the purpose of defrauding him. Plaintiff admitted in Paragraph 59 of the Amended Complaint that Plaintiff held nine other events in the names of other entities subsequent to the Wyoming Event (which took place on June 2nd 2018 per Paragraph 55). Moreover, Plaintiff admitted that he discovered the existence of the other entities in 2019 (See Amended Complaint Paragraph 70 through 73).  Thus, there is no way that the subsequently created entities could have in some way constituted a fraudulent misrepresentation, or utterance.

C.    **THE MERE CREATION OF OTHER ENTITIES AFTER THE AGREEMENT IS NOT A MISREPRESENTATION**.

Plaintiff does not aver how the holding of other events by other entities constitutes fraud and has not specified the names of those entities, nor has he specified how it is that other entities holding events somehow induced Plaintiff into agreeing to send investment monies to Defendant.

By Plaintiff's own admission in paragraph 72 of the Amended Complaint; Plaintiff learned on his own, through his own investigation, and after 2018, that Defendant Feldman was holding events through the names of different entities.  Thus, it is impossible for Defendant to

have fraudulently induced Plaintiff if Defendant never made any material misrepresentations that Plaintiff relied on.  Plaintiff learned of the other entities through his own investigation; and there is no allegation that Defendant withheld or lied about their existence – to the contrary, Plaintiff admits that they were created AFTER the Wyoming event and thus after the alleged 2012 oral agreement; therefore, it cannot possibly constitute a misrepresentation since it was subsequent to the alleged meeting of the minds.

Plaintiff admits that Defendant created separate entities after the alleged agreement was made which cannot in and of itself be evidence of fraud in the inducement since it happened after the fact; moreover there is no specificity, plaintiff still does not identify the other entities; and again if this alone is a cognizable claim then that means a partner for one business could never be permitted to become the owner or creator of a separate business which is clearly not the law.   – the fact that the businesses may conduct similar activities is irrelevant.  The allegation that the mere creation of another business who runs other fighting events in no way establishes the elements of fraud which need to be plead with particularity.

D.    **MERE ALLEGATIONS THAT MR. FELDMAN "DECEIVED" PLAINTIFF DO NOT ESTABLISH MISREPRESENTATION, UTTERANCE, OR JUSTIFIABLE RELIANCE.**

In the actual Fraud Count, Stewart claimed that Feldman deceived Stewart but does not indicate how it is he was deceived, the Amended Complaint does not address what was said or done by Feldman that was a misrepresentation that Stewart relied on.  To that end, the Amended Complaint lacks the utterance requirement and lacks the reliance requirement. All Plaintiff does is suggest that he asked Feldman to sign an agreement AFTER the oral agreement was already reached but there is no indication that any responsive utterance was made and even if it was, it could not have induced reliance since it was AFTER the oral agreement was already reached.  Plaintiff claims in its Response, page 5 that paragraphs 110 through 113 establish the "how" of the fraud; however, Plaintiff ignores the inducement element. Plaintiff's Amended

Complaint admits that it was he, Plaintiff, who "asked" Defendant to sign a formal agreement
and provide financials AFTER the 2012 oral arrangement.   The Amended Complaint Paragraph
28 indicates that after the oral agreement was reached; Stewart then "asked Feldman for a written
contract evidencing their agreement and for more information regarding the finances and affairs
of the venture"… thus, by Plaintiff's own admission, at the time the agreement was allegedly
reached in 2012 there was no promise to sign a written agreement, this was requested after the
fact by Plaintiff.

The only indication in the Amended Complaint about the timing of when Defendant agreed
to provide the written agreement and financials is found at paragraphs 66 through 69 and
indicates that the Feldman promised to get the documents to him at some time in 2019 and that
he would do so when he and his attorney were no longer busy.  However, there is no averment
that any monies were sent to Defendant after this point; so it is impossible for this promise to
have been a valid fraudulent inducement.

E. **PLAINTIFF'S AVERMENT THAT DEFENDANT HAD NO INTENTION ON
RECOGNIZING PLAINTIFF'S 40% INTEREST IS NOT EVIDENCE OF A
MISREPRESENTATION, OR AN UTTERANCE.**

Plaintiff suggests that Mr. Feldman had no intent on recognizing Stewart's 40% interest
when the conversations took place in 2012 which lead to an agreement.  This is actually true;
since Plaintiff had no interest in all the events that Mr. Feldman would be putting on; Stewart
was merely an investor in isolated events, not in every single business venture that Defendant
Feldman would ever undertake.   Thus, there is no misrepresentation, no fraudulent utterance and
no justifiable reliance since Plaintiff was not justified in thinking he had a share in every
business venture Defendant would ever be engaged in.  To accept Plaintiff's claim as cognizable
would mean that whenever someone agrees to partner with someone else for on a venture for one
isolated business opportunity; then that person is essentially agreeing to a stake in every possible
business venture that the other partner ever becomes involved in.  This is not the law.   At best,

Plaintiff has alleged he is a partner on specific events, not a partner in every business entity ever created by Defendant.

F. **PLAINTIFF'S COMPLAINT ALLEGING MISREPRESENTATIONS IN PARAGRAPHS 119 AND 120 OF AMENDED COMPLAINT STILL LACKS SPECIFICITY AND PARTICULARITY**.

Plaintiff refers to "misrepresentations" but it is not clear what misrepresentations he is referring to since the other entities were created after the fact – Defendant Feldman can only assume Stewart is referring merely to the fact that Mr. Feldman never intended on signing an agreement; however, this was never alleged to be a requirement in the agreement in the first place.  To the contrary, as Plaintiff admitted in paragraphs 17 through 20; there was merely an oral agreement that took place in 2012 with no reference to any written agreement requirement. See also Paragraph 89 where Plaintiff admits there is merely an oral agreement for Stewart to be a 40% shareholder in the partnership – there is no mention of any promise by Feldman to sign a written contract.  Even if he did; his failure to sign a written contract is merely evidence of a breach; not evidence of fraud.

We assume for the sake of argument that Plaintiff is now attempting to manipulate his Amended Complaint to suggest that Mr. Feldman promised to sign a written agreement in 2012 prior to them striking an oral deal but knew he never would.  This is an impossible inference to make from the Amended Complaint because it is contradicted by what Plaintiff averred in his Amended Complaint at paragraph 28 which indicates that after the oral agreement was reached; Stewart then "asked Feldman for a written contract evidencing their agreement and for more information regarding the finances and affairs of the venture". By the very nature of this averment, Plaintiff's request was AFTER the fact, since it was requested to evidence their agreement; thus, by Plaintiff's own admission, at the time the oral agreement was allegedly reach in 2012 there was no promise to sign a written agreement, this was requested after the fact by Plaintiff.  Thus, this too cannot possibly form the basis of a misrepresentation made by

Defendant.  Moreover, per Plaintiff's admission, Plaintiff merely requested it; this is not the same as Plaintiff volunteering that he would nor is there even an averment that Defendant agreed to do so.

G. **THERE IS NO FRAUD PLEADED WITH RESPECT TO THE CONTINUING PAYMENTS SINCE PLAINTIFF NEVER AVERRED THAT DEFENDANT INDICATED THAT HE WOULD IN FACT SIGN A WRITTEN AGREEMENT; NOR IS THERE ANY INDICATION THAT DEFENDANT AGREED TO PROVIDE FINANCIAL STATEMENTS**.

Plaintiff claims that he continued to send payments to Defendant because of misrepresentations made by Defendant.  He claims that he was under the impression that Defendant would sign a written agreement and forward financial statements at some point in the future.  While he may have thought that Defendant would; this falls short of an averment that Defendant actually made such an utterance. Moreover, this is contradicted by the Amended Complaint at Paragraph 28 where Plaintiff clearly states that he requested this after the oral agreement was already reached.  There is no averment about Defendant agreeing to do so; nor is there any indication that Defendant volunteered this information so that Plaintiff would continue paying him. The point is; it was an after the fact request by Plaintiff that Defendant was within his right to refuse.  Again, this does not provide a basis for actionable fraud.

H. **PLAINTIFF ADMITS THAT HE CONTINUED TO PAY DEFENDANT EVEN AFTER DEFENDANT REFUSED TO PROVIDE A SIGNED, WRITTEN AGREEMENT – THUS PLAINTIFF HAS NOT PLEADED JUSTIFIABLE RELIANCE; TO THE CONTRARY, HE HAS ACTUALLY PLEAD THE COMPLETE OPPOSITE!**

Plaintiff admits that he had asked Defendant for a signed written agreement but that he never gave him one.  Thus this averment cannot possibly establish Defendant's justifiable reliance since he never actually got the signed and written agreement yet he continued sending money anyway.  How could Plaintiff allege that he relied on this if he never actually got one? Plaintiff

does not aver that Defendant replied "yes" when he asked him for the written agreement (see Parag. 28 – 35 of Amended Complaint).

To the contrary; Plaintiff's Amended Complaint indicates the opposite:

> "66. After the February 2019 meeting, Feldman paid Stewart $10,000 via personal check, purportedly as a return on Stewart's investment.
>
> 67. Throughout the spring and summer of 2019, Stewart continued to demand a written operating agreement and complete financial information regarding BKFC.
>
> 68. Feldman continued to stonewall Stewarts requests, often informing him that his lawyer was not getting back to him or that he was busy."

Moreover; after those paragraphs, Plaintiff alleges that Feldman promised Stewart that documents would be forthcoming when his attorney was no longer busy. (See Plaintiff's Response to this Motion Page 4). However, this was in February of 2019 (not in 2012 – 2018 when the payments were made) and thus this final alleged "promise" in 2019 cannot possibly have been the basis for the inducement of payments made in the 7 years prior. Again, the elements of actionable fraud are not properly plead,

II.   **CONCLUSION**

For the reasons stated herein, Defendants' Motion to Dismiss Count V for Fraud should be GRANTED.

Dated: June 30, 2020                              /Simon J. Rosen, Esq./

                                                 Counsel for Defendants/Movants

**CERTIFICATE OF SERVICE**

I, Simon Rosen, Esq., hereby Certify that a true and correct copy of the
within Sur Reply to Plaintiff's Response to Defendantgs' Motion to
Dismiss Count V- Fraud- and accompanying papers was duly served
upon all interested by parties on 6-30-20 through the Court's ECF
Filing system.

Dated: 6-30-20                    /Simon Rosen, Esq./