## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Edward Stewart

*Plaintiff,*

vs.

David Feldman, *et al.*

*Defendants.*

Civil Action
No. 20-776

## ORDER

AND NOW, on this _____ day of _____, 2020, it is hereby ordered that:

1.     Within 7 days of the date of this Order, Defendants shall provide written responses to Plaintiff's Requests for Documents that:

a.     Comply with FED. R. CIV. P. 34(b)(2), including by stating whether they are producing records responsive to each request or whether they do not possess any such records, and by organizing and labeling any responsive documents to correspond to the categories in the requests.

b.     Include a signed certification of counsel that the discovery responses are complete and correct.

2.     Within 7 days of the date of this Order, Defendants shall produce all documents responsive to Plaintiff's Requests for Documents.[1]

3.     Defendants shall pay to Plaintiff Edward Stewart $4,525.00 for his costs for Defendants' failure to comply with their discovery obligations.

---

[1] The Court notes again that it has discretion to issue discovery sanctions if Defendants fail to comply with their discovery obligations.

BY THE COURT:

 

_____

GALLAGHER, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Edward Stewart

   vs.

David Feldman, *et al.*

Civil Action
No. 20-776

**REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS**

Defendants continue to violate this Court's orders and the discovery rules. They produced documents in drips and drabs until last Friday, a week after this Court's deadline. While Defendants claim that they have produced all responsive records, Defendants have not produced a variety of documents that they almost certainly must have. Nor have they provided any formal, request-by-request discovery responses explaining what documents they possess, explaining how their production corresponds to the requests, and certifying to completeness and correctness.

Plaintiff has grave concerns about the sufficiency of Defendants' production and about the diligence of their search for responsive documents. Most concerningly, Defendants appear to be avoiding producing the critical evidence that would confirm Plaintiff's theory of the case. Plaintiff has asserted all along that Defendants formed a new entity to cut Plaintiff out of the business after he invested $250,500 into it. On that issue, Defendants produced only a single email showing that they formed a "new company" just when the Bare Knuckle Fighting Championship began to see success. It is apparent that there are more. Other large gaps in production are also evident.

Plaintiff asks this Court to require Defendants to provide formal discovery responses, to produce all outstanding responsive records, and to certify their compliance with the discovery rules. Plaintiff further asks for monetary sanctions to address the unreasonable costs that Defendants have imposed.

## BACKGROUND

On May 25, 2020, Plaintiff requested various documents from Defendants. Defendants asked for repeated extensions, which the undersigned always granted. The last extension was until July 14. Instead of producing almost any documents, Defendants filed on July 31 a motion for protective order to limit discovery. (Doc. 28). While this Court believed that Defendants had reasonable concerns about confidentiality, Defendants' motion argued that any discovery was suspect because they disagreed with Plaintiff's claims. They believe that their disagreement meant that Plaintiff should have to get judicial permission to conduct any discovery.

After Plaintiff agreed to a confidentiality order, this Court denied the motion for protective order and required Defendants to produce the responsive documents by August 19. (Doc. 31). Defendants did not meet that deadline, instead asking for more time. (Doc. 39). This Court gave Defendants until September 4. (Doc. 41). By September 4, Defendants provided less than 30 pages of additional documents. They promised that they would produce the remaining documents within two weeks.

Plaintiff filed a motion for discovery sanctions. (Doc. 44). Instead of simply dealing with their failure to comply with this Court's repeated discovery orders by producing the necessary documents, Defendants filed yet another motion to preclude discovery in unusual garb.

The day after Plaintiff filed the sanctions motion, Defendants filed a purported motion to bifurcate trial. (Doc. 46). However, this motion was not really a motion to bifurcate. Instead, Defendants argued that bifurcation would somehow limit discovery. They sought to bifurcate the existence of an agreement between the parties from all other matters in this case, such as damages. They claimed that most discovery went only to damages and not to liability — a proposition with which Plaintiff strongly disagrees.

– 2 –

Regardless, Defendants claimed that, if this Court bifurcated the trial, that would somehow mean that Plaintiff could not get most of the discovery he sought: "If this Court opines that plaintiff Stewarts owns no proprietary interest in defendants' companies, then a great deal of the sought after discovery is irrelevant, immaterial and moot." (Doc. 46 at 6).

Once again, Defendants recited their disagreement with Plaintiff's theory of the case as a basis to limit discovery. They cited no authority for the proposition that bifurcation would limit discovery. Nor is there any. In short, Defendants have repeatedly filed frivolous motions to restrict discovery when faced with a discovery deadline.

At the conference on the sanctions motion, this Court asked Defendants to withdraw the motion. They did so. This Court then gave Defendants another eight days to provide documents, warning them of this Court's power to issue discovery sanctions. (Doc. 48).

After that, Defendants' pattern of non-compliance continued. Defendants provided some documents by the September 18 deadline. Afterwards, Defendants' counsel sent the undersigned twelve separate emails with additional responsive documents through Friday, September 25. None of this production was organized to correspond to Plaintiff's requests. Emails were forwarded from Defendants' counsel to the undersigned without referenced attachments. Defendants provided various Dropbox links. But no formal discovery responses reflect Defendants' production or position on Plaintiff's requests.

The undersigned does not know whether Defendants believe that they have now completed a thorough search for responsive records. That concern arises for three separate reasons.

*First*, Defendants never provided formal responses to Plaintiff's requests despite repeated requests for them. They still have not explained what categories of records they claim they do not possess or what documents correspond to what requests. Nor has their counsel certified to the

– 3 –

completeness and correctness of Defendants' discovery responses under Rule 26(g), as his signature on formal discovery responses would do. Moreover, Defendants' counsel has claimed during phone conferences that certain documents are in the custody of third parties. But no responses indicate what documents Defendants claim are not within their custody, nor has Defendants' counsel otherwise explained that.

*Second*, Defendants' production makes it almost impossible to believe that it is complete. They have not produced any number of documents that they almost surely must have. The following table summarizes the request, the production, and what almost certainly remains outstanding and unproduced—of course, additional, unspecified documents may also exist:

| Request | Production | Unproduced |
|---|---|---|
| Operating agreements for the BKFC entities | Members Agreement for Bare Knuckle Fighting Championships, LLC; Fourth Amended Members Agreement for Bareknuckle Fighting, LLC | Operating agreements for Bare Knuckle, LLC and Bare Knuckle Boxing, LLC; the original Members Agreement for Bareknuckle Fighting, LLC and the First through Third amended versions of that agreement |
| Debt obligations | None | Documents reflecting investor Anthony Rufo's loan to BKFC, which Defendants said they would produce but which they have not |
| Documents soliciting investment | None | The "BKF[C] investor proposal" that Defendants asserted that they provided to Plaintiff, but which they did not |
| Communications soliciting investment | None | Communications with Anthony Rufo who ultimately invested $4 million; communications with any other potential investors, including those who received the "investor proposal" |

| Request | Production | Unproduced |
|---|---|---|
| Tax returns | Personal tax returns for Defendant David Feldman for 2014–2017; Bareknuckle Fighting, LLC's 2019 tax return; Bare Knuckle Fighting Championships, LLC's 2019 tax return | Personal tax returns for Defendant David Feldman for 2018–19, 2018 tax return for Bareknuckle Fighting, LLC and Bare Knuckle Fighting Championships, LLC; all tax returns for Bare Knuckle, LLC; all tax returns for Bare Knuckle Boxing, LLC |
| Communications with Plaintiff Edward Stewart | One email | Any text messages between Plaintiff Edward Stewart and Defendant David Feldman, of which there were many; any additional emails |
| Communications about Stewart | Likely none (one email discusses an unspecified person who had been involved in BKFC, which may be Plaintiff Edward Stewart, but which is unclear) | All emails about Stewart, with whom Defendant David Feldman had extensive dealings, and for whom other parties prepared documents, such as accountants |
| Communications with investors | A few emails with Anthony Rufo | All emails with Anthony Rufo (the produced emails indicate frequent discussions and updates exchanged between Defendant David Feldman and Anthony Rufo, who invested $4 million into BKFC) |
| Communications with witnesses disclosed on Defendants' Initial Disclosures | A few emails with the company's accountant | All communications with the company's accountant, who appears to have frequently emailed Defendant David Feldman; and any communications with the other disclosed witnesses |
| Accounting records and financial documents | Profit and loss statements for the BKFC events, and for the entity Bareknuckle Fighting, LLC; bank statements for XF Events and Bareknuckle Fighting, LLC | Bank statements for the other entities; any other accounting documents that the company's accountant prepared, including for the other entities |

| Request | Production | Unproduced |
|---|---|---|
| Operational contracts | Contracts for payments to fighters at three BKFC events, BKFC's current streaming contract with DAZN, contracts with a pay-per-view company for two BKFC events, contracts to book venues for fights for five BKFC events, and a representation agreement for media-distribution services | All operational contracts for all BKFC events, to indicate what entity or entities carry out BKFC's business and receive revenue from BKFC events (the produced contracts indicate that a variety of entities have been used to enter into contracts, and so the organizational structure of BKFC remains unclear) and as to damages |
| Formation documents | Formation documents for Bare Knuckle Boxing, LLC and Bare Knuckle, LLC | Formation documents for the "new company" that now carries out BKFC's business, Bareknuckle Fighting, LLC; formation documents for Bare Knuckle Fighting Championships, LLC |
| Communications relating to the formation of entities involved in the Bare Knuckle Fighting Championship | A single email indicating BKFC's efforts to form a "new company," which was ultimately formed and now carries out BKFC's business | Any other email relating to the formation of the new company, or any of the other entities |
| Trademark applications | A printout of the USPTO's website reflecting ownership of BKFC's trademarks | The *application* for the trademark, to indicate what entity or entities used the marks in commerce and when they began to do so |
| Records reflecting payments or distributions to Feldman | None | All such records |
| Website information | A "whois" lookup indicating that GoDaddy registered bareknuckle.tv | Any document indicating who owns the domain name bareknuckle.tv — BKFC's website — and who has the account with GoDaddy |

*See* (Exh. A: Plaintiff's discovery requests).[1]

These gaps suggest the lack of a serious and thorough attempt to comply. For instance, Defendants have produced less than a dozen emails. These emails indicate extensive conversations between Defendant David Feldman, investor Anthony Rufo, and the company's accountant. The produced emails also reflect that Defendant David Feldman conducts a great deal of business by email. Yet Defendants produced only partial scraps of a few threads.

Most concerning is that it seems plain that Defendants are not producing emails that would establish Plaintiff's theory of the case. Plaintiff asserts that he funded the formation of BKFC and that Defendants cut him out once it began to see success. He contends that they formed a new entity to operate the business to do that. And the limited production so far shows just that: Defendants formed a new entity just when BKFC was able to start putting on sanctioned bare-knuckle fights for the first time.

On April 19, 2018, two months before the first public event, an accountant wrote Feldman and explained: "Waiting on Bernie to form an operating agreement for the new company, Bareknuckle Fighting LLC." The same day, investor Anthony Rufo explained that "Bernie" "is getting [the new operating agreement] wrapped up today." (Exh. B). Other documents just produced show that this "new company" now operates the business; the operational contracts are in its name.

Yet Defendants have produced only a single email about the formation of that entity. They do so even though Defendant David Feldman, investor Anthony Rufo, and the company's accountant

---

[1] Plaintiff would like to submit a document indicating what Defendants produced so that this Court can compare it to the requests if this Court so desires. However, because Defendants have provided documents to the undersigned in at least 16 separate emails with various attachments and Dropbox links without bates-stamping and without any complete summary of their production, no such document exists.

were all involved in a plan to create it, which they coordinated by email.

*Third*, the face of Defendants' response brief indicates their lack of diligence. They explain that Defendant David Feldman located the scant emails that he produced on September 23, 2020—last Wednesday, *after* this Court's most recent deadline. (Doc. 51 at 4). Yet the emails indicate that even a cursory search for them would have revealed that they are responsive. All Defendant David Feldman had to do was log in to his gmail account "xfevents@gmail.com" and enter the most obvious of keywords ("rufo" or "bareknuckle" or the accountant's last name).

## Legal Argument

Plaintiff addresses first his position on the status of discovery and what steps Defendants should take to comply with their discovery obligations. Plaintiff then addresses his outstanding sanctions request.

### I.     Defendants must do more to comply with their discovery obligations.

Defendants must provide formal discovery responses that indicates what documents they are producing, what documents they claim that they do not possess, and what documents correspond to what requests in some intelligible means. *See* Fed. R. Civ. P. 37(b)(2)(B) ("For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."); Fed. R. Civ. P. 37(b)(2)(E)(i) ("A party must . . . must organize and label [documents] to correspond to the categories in the request."). This step is important not only to enable Plaintiff to understand Defendants' document production, but also because formal discovery responses contain an important certification from counsel.

When counsel signs formal discovery responses outlining their clients' position as to each

discovery request, the signature is a certification under Rule 26(g) that the clients' responses are "complete and correct as of the time [they were] made." Rule 26(g) renders Defendants' counsel personally responsible for ensuring the sufficiency of the document production and not simply relying on Defendants' assertion that they have provided all responsive records. FED. R. CIV. P 26(g)(1)(A); *see Rodman v. Safeway, Inc.*, No. 11-3003, 2016 WL 5791210, *2–*3 (N.D. Cal. Oct. 4, 2016) (collecting authorities as to attorney's duty to supervise document production, particularly in cases with electronic files, including the oft-cited decision in *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 435 (S.D.N.Y. 2004) (Scheindlin, J.)).

Further, given the apparent gross deficiencies in the existing responses, this Court should order Defendants to review their production to ensure that they have produced all responsive records. There are strong reasons here to believe that Defendants' production is inadequate.

**II.      This Court should order monetary sanctions but continue to hold evidentiary sanctions under advisement.**

Plaintiff asks for monetary costs for his expenses so far in obtaining discovery after this Court's denial of Defendants' Motion for Protective Order. Defendants did not comply with this Court's third order compelling document production despite this Court's patience. Defendants still have not provided any formal request-by-request discovery responses. They continued to produce documents even after this Court's deadline of September 18. And it is almost impossible to believe that they have now provided all responsive records.

Plaintiff has suffered an odyssey just to get non-compliant document production. This Court should not allow Defendants to inflate Plaintiff's costs. They have failed to comply with the discovery rules, sought to avoid their discovery obligations with frivolous motions, and defied this Court's orders.

Defraying Plaintiff's resulting expenses is proper. Defendants have no "substantial justification" for their actions, as is necessary to avoid fees under Rule 37(b)(2)(C). An updated Declaration is attached hereto, which reflects $4,525.00 in fees to seek document production that Plaintiff incurred after this Court's denial of the motion for protective order.

As to evidentiary sanctions, Plaintiff asks this Court to continue hold the matter under advisement pending Defendants' response to the apparent deficiencies in their production.

## CONCLUSION

Plaintiff asks this Court to: (1) order Defendants to review their production and ensure that they have produced all responsive records; (2) order Defendants to produce any outstanding responsive record; (3) order Defendants to provide formal discovery responses; and (4) award $4,525.00 in monetary sanctions.

Respectfully submitted,

*/s/ Daniel J. Auerbach*
Daniel J. Auerbach (PA I.D. No. 316856)
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
(215) 567-1486
dan@gamburglaw.com

Dated: September 28, 2020

# Declaration of Counsel

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Edward Stewart

    vs.

David Feldman, *et al.*

Civil Action
No. 20-776

**DECLARATION OF DANIEL J. AUERBACH IN SUPPORT**
**OF PLAINTIFF'S MOTION FOR SANCTIONS**

1.      My name is Daniel Johnson Auerbach.

2.      I represent Plaintiff Edward Stewart.

3.      The fee agreement between Plaintiff and Gamburg & Benedetto, LLC provides that

Mr. Stewart will pay the firm hourly. The agreement provides that my billing rate is $250.00 per

hour.

4.      I billed a total of 18.1 hours in seeking discovery after Defendants failed to comply

with this Court's August 5, 2020 Order compelling production, (Doc. 31), as follows:

| Date | Task | Hours |
|------|------|-------|
| September 28, 2020 | Finished drafting and filed reply brief, letter requesting discovery conference, motion for leave to file reply brief; correspondence with the Court | 3.0 |
| September 27, 2020 | Correspondence with opposing counsel re document production sanctions | 0.2 |
| September 27, 2020 | Drafting and research re reply brief | 2.5 |
| September 25, 2020 | Reviewed Defendants' response to motion for sanctions; began drafting and researching reply brief | 3.5 |
| September 23, 2020 | Reviewed Defendants' discovery responses and production to assess Defendants' compliance with discovery obligations. | 0.5 |
| September 22, 2020 | Reviewed Defendants' discovery responses and production; phone call with Simon Rosen, Esq. re outstanding discovery issues | 1.0 |
| September 21, 2020 | Reviewed Defendants' discovery responses and production to assess Defendants' compliance with discovery obligations. | 0.5 |

| Date | Task | Hours |
|------|------|-------|
| September 10, 2020 | Prepared for attending discovery conference. | 1.0 |
| September 9, 2020 | Reviewed motion for bifurcation and research bifurcation issues. | 0.8 |
| September 8, 2020 | Drafted motion for sanctions and response to Defendants' Motion for Extension of Time, including necessary research into the standard for the grant of discovery sanctions. | 1.9 |
| August 26, 2020 | Drafted response to Defendants' Motion for Extension of Time | 2.2 |
| August 25, 2020 | Phone call with Simon Rosen, Esq. re status of discovery | 0.2 |
| August 25, 2020 | Drafted motion to compel production for non-compliance with initial discovery order | 0.8 |

     5.     18.1 hours of my time amounts to $4,525.00 under the terms of the fee agreement.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 28, 2020.

Respectfully submitted,

    */s/ Daniel J. Auerbach*
Daniel J. Auerbach (PA I.D. No. 316856)
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
(215) 567-1486
dan@gamburglaw.com

Dated: September 28, 2020

# Exhibit A

to Plaintiff's Reply Brief in support
of his Motion for Sanctions

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Edward Stewart | |
| *Plaintiff,* | |
| vs. | Civil Action |
| | No. 20-776 |
| David Feldman, *et al.* | |
| *Defendants.* | |

**PLAINTIFF'S EDWARD STEWART'S FIRST SET OF REQUESTS
FOR DOCUMENTS DIRECTED TO DEFENDANTS**

In accordance with FED. R. CIV. P. 34, Plaintiff Edward Stewart propounds these requests for production of documents and electronically stored information on the Defendants. Mr. requests that the following documents and ESI be produced within 30 days, either electronically or by mail to the law offices of Gamburg & Benedetto, located at 1500 John F. Kennedy Blvd., Suite 1203, Philadelphia, PA 19106.

## DEFINITIONS

A.     "BKFC" means the business that operates as the Bare Knuckle Fighting Championship.

B.     The "BKFC Events" are the events held under the Bare Knuckle Fighting Championship brand, which events are listed online at https://www.bareknuckle.tv/events (as of May 22, 2020) as: (1) BKFC 1, on June 2, 2018 in Cheyenne, WY; (2) BKFC 2, on August 25, 2018 in Biloxi, MS; (3) BKFC 3, on October 20, 2018 in Biloxi, MS; (4) BKFC 4, on February 2, 2019 in Cancun, Mexico; (5) BKFC 5 on April 6, 2019, in Biloxi, MS; (6) BKFC 6, on June 22, 2019 in Tampa, FL; (7) BKFC 7 on August 10, 2019 in Biloxi, MS; (8) BKFC 8 on October 19, 2019 in Tampa, FL; (9) BKFC 9, on November 16, 2019 in Biloxi, MS; (10) BKFC 10, on February 15, 2020 in Ft Lauderdale, FL; (11) BKFC 11, scheduled for June 20, 2020 in Wichita, KS; and (12) BKFC 12,scheduled for April 11, 2020, in Birminghan, AL.

C.     A "BKFC Event" is any of the BKFC Events.

D.     "Communication" or "communications" means any communication or method of disclosing information regardless of its form, whether electronic or tangible, regardless of who sends or receives it. It includes—without limitation—correspondence, memoranda, telegrams, telexes, email messages, transcribed voice-mail messages, text messages, documents reflecting meetings or discussions, releases, statements, reports, publications, or any recording or reproduction of any form of oral communication.

E.      "Defendants" means: (1) all of the Defendants to this action—that is, David Feldman; Bare Knuckle, LLC; Bare Knuckle Boxing, LLC; and Bare Knuckle Fighting Championships, LLC; and (2) any of their subsidiaries, agents, officers, executives, employees, or any other person or entity acting or purporting to act on its behalf.

F.      "Document" or "documents" means any communication or communications, and in addition any written or graphic matter of every kind or description, however, produced or reproduced, whether electronic or tangible, draft or final, original or reproduction signed or unsigned, and regardless of whether approved, signed, sent, received, redrafted, or executed, including without limitation: written communications, letters, correspondence, facsimiles, e-mail, memoranda, minutes, notes, films, recordings, of any type, transcripts, contracts, agreements, purchase or sales orders, memoranda of telephone conversations of personal conversations, diaries, desk calendars, interoffice communications, reports, studies, bills, receipts, checks, checkbooks, invoices, requisitions or material similar to any of the foregoing however denominated, by whomever prepared, and to whomever addressed.

G.      "Feldman" means Defendant David Feldman.

H.      "Stewart" means Plaintiff Edward Stewart.

I.      "relating to" or "relate to" means to consist of, refer to, reflect, relate to, or be in any way logically connected with the matter discussed.

## REQUESTS FOR PRODUCTION

Stewart requests that Defendants produce the following documents:

1.      Any document that Defendants identified in their initial disclosures pursuant to FED. R. CIV. P. 26(a)(1)(A)(ii).

2.      Any contract to which Stewart is a party.

3.      Any document reflecting the members or owners of any of the Defendants.

4.      Any operating agreement, by-laws, or similar document relating to any of the Defendants.

5.      Any minute meetings for any of the Defendants from January 1, 2013 to present.

6.      Any document reflecting any debt obligation of any of the Defendants or equity interest in any of the Defendants.

7.      Any prospectus or other similar disclosure document relating to the solicitation of investment in any of the Defendants.

8.      Any loan application that any of the Defendants have submitted from January 1, 2013 to present.

9.      Any communication soliciting an investment in any of the Defendants or in the Bare Knuckle Fighting Championship.

10.     The tax returns and all accompanying schedules or documents from tax year 2013 to present and any documents used to prepare them for any of the Defendants and any other entity that is involved in any way in the operation of BKFC or of any BKFC Event.

11.     All of the Defendants tax returns from tax year 2013 to present.

12.     Any communication between any of the Defendants and Stewart.

13.     Any communication relating to Stewart between any of the Defendants and any person or entity.

14.     Any communication between any of the Defendants and any investor in any of the Defendants.

15.     Any communication with any witness listed in Defendants' disclosures under FED. R. CIV. P. 26(a)(1)(A)(i).

16.     Any accounting record prepared for any of the Defendants from January 1, 2013 to present.

17.     Any communication between the Defendants and any accountant.

18.     Any financial document relating to the Defendants from January 1, 2013 to present including without limitation bank statements and accounting ledgers.

19.     Any document reflecting the profit or loss from any BKFC Event.

20.     Any contract relating to any BKFC Event.

21.     Any document relating to any BKFC Event.

22.     Any document reflecting the formation of any entity involved in any way in the operation of BKFC or of any BKFC Event.

23.     Any communication relating to the formation of any of the Defendants or of any other entity involved in any way in the operation of BKFC or of any BKFC Event.

24.     Any trademark application that any of the Defendants submitted, including without limitation the applications with serial numbers 8818378 and 87357840.

25.     Any document supporting your contention that no written contract exists that provides Stewart with a 40% interest in BKFC.

26.     Any document concerning the allegations in the Complaint.

27.     Any document prepared or reviewed by any expert or consultant in connection with this litigation regardless of whether Defendants intend to call the expert or consultant at trial.

28.     Any document reflecting any payment from Defendants  or any other entity involved in any way in the operation of BKFC or of any BKFC Event to Feldman, including without limitation salary, dividends, or profit distributions.


29.     Any document that Defendants intend to rely upon at summary judgment or trial.

30.     Any document reflecting the ownership of the domain name bareknuckle.tv

Respectfully submitted,

_____*/s/ Daniel J. Auerbach*_____
Donald Benedetto (Pa. I.D. No. 309199)
Daniel J. Auerbach (Pa. I.D. No. 316856)
Gamburg & Benedetto, LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
Telephone: (215) 567-1486
E-mail: don@gamburglaw.com
dan@gamburglaw.com

Dated: May 25, 2020

**CERTIFICATION OF SERVICE**

I certify that, on the date below, I served this paper on the following by electronic mail:

Simon Rosen, Esq.
Law Office of Simon Rosen, PLLC
325 Chestnut Street, Suite 800
Philadelphia, PA 19106
simonkey@aol.com

*Counsel for Defendants*

                     */s/ Daniel J. Auerbach*
                     Donald Benedetto (Pa. I.D. No. 309199)
                     Daniel J. Auerbach (Pa. I.D. No. 316856)
                     Gamburg & Benedetto, LLC
                     1500 John F. Kennedy Blvd., Suite 1203
                     Philadelphia, PA 19102
                     Telephone: (215) 567-1486
                     E-mail: don@gamburglaw.com
                     dan@gamburglaw.com

Dated: May 25, 2020

# Exhibit B

to Plaintiff's Reply Brief in support
of his Motion for Sanctions

## Dan Auerbach

**From:** Simon Sez <simononkey@aol.com>
**Sent:** Wednesday, September 23, 2020 3:09 PM
**To:** Dan Auerbach
**Subject:** SECOND SUPLEMENTAL RESPONSES TO RPD- Fwd: Update

Please see email string, below.

Cordially yours,

Simon Rosen, Esq.

---------- Forwarded message ---------
From: **anthony rufo** <tonyrufo1@hotmail.com>
Date: Thu, Apr 19, 2018 at 10:03 AM
Subject: RE: Update
To: Steven Mclaughlin <stevenm8800@hotmail.com>, xfevents@gmail.com <xfevents@gmail.com>

Stevie,

I think Bernie finished #3 .

Bernie said umber 4 is getting wrapped up today.

I don't need an Loi or contract for #5, just pay that right away.

Dave  can blow off the Mayweather thing if he wants  .

Thanks

**From:** Steven Mclaughlin [mailto:stevenm8800@hotmail.com]
**Sent:** Thursday, April 19, 2018 9:50 AM
**To:** xfevents@gmail.com
**Cc:** tonyrufo1@hotmail.com; Steven Mclaughlin <stevenm8800@hotmail.com>
**Subject:** Update

Dave, Tony,

Here is where we are at and what we are waiting on now:

1. Waiting on the PPV Distribution contract to be signed and returned to us. A payment of 20k has already been made.
2. Waiting on a production contract for the 90k invoice that was sent the other day.
3. Waiting on Bernie to go over and redline the closed circuit documents that Dave sent to me the other day.
4. Waiting on Bernie to form an operating agreement for the new company, Bareknuckle Fighting LLC.  This should come today.
5. Need to pay the 3750 invoice for the Swanson public relations people, Tony needs to review the LOI.
6. Dave needs to get back to Bernie regarding the Mayweather people.

Maybe I am missing something and for sure we are going to be adding to this list quickly over the next month.

Dave, please cc me on any emails to Tony with invoices or contracts, the Swanson one I could not find and finally figured you sent to him only.

Steve