## DECLARATION OF DAVID FELDMAN, SR.

I, David Feldman, Sr., hereby declare under penalty of perjury that the following is true and correct, to the best of my knowledge, information and belief:

1. I am a private individual who resides and does business within this District.

2. From the beginning that I was sued by Edward Stewart, I have been the main person involved in gathering information and documents for Simon Rosen, Esq. in regard to this case.

3. From the beginning I was sued by Edward Stewart, I never acted to conceal information or documents, or to stall or delay getting documents to Attorney Rosen.

4. Mr. Stewart has sought information and documents that cover a span of at least Eight (8) Years, from 2013 through 2020, and involving many companies, one of whom never actually transacted any business (it is my understanding that Mr. Stewart kept asking for documents and information about one of my companies that didn't do business).

5. I have attached a Timeline for the period from December 30, 2013 through February 2, 2017 – which was the period stated in the Amended Complaint during which I received money from Mr. Stewart; the Timeline represents the dates of payments, which I acknowledge, and which agree with what Mr. Stewart wrote down in his Amended Complaint- there is no dispute as to when the money was paid, and how much money was paid, except there is a dispute regarding one of the $50,000 payments- because it was not paid to me or for me- that was paid by Stewart on his own.

6. There is also a dispute regarding $28,500 of the money.

7. Although I agree that the initial $177,000 I received from Stewart was intended to go, and did go, towards two (2) failed boxing events- the other $28,500, was used to benefit Mr. Stewart's son, an aspiring boxer, Henry Stewart, and had nothing to do with investing in my bare knuckle boxing events as Stewart claimed in the Amended Complaint.

8. The last time I received money from Mr. Stewart relating to bare knuckle boxing was September 16, 2014, more than five (5) years prior to Mr. Stewart suing me.

9. When I was sued, I had no idea where the paperwork was for 2013 and 2014- some of it was thrown out- the two events never happened and there was no reason to keep

them- and it was very difficult to find documents and information regarding those events.

10. When I was sued, I had difficulty obtaining certain information all the business records because they were scattered in different places and the information and records sought was very,very much to find and locate.

11. In addition, long after Mr. Stewart stopped investing in my bare knuckle boxing events I was able to locate investments into my events from new sources- and new companies were formed; much of the documents and information requested by Mr. Stewart were scattered in many places, and again the amount of information and documents that were sought was gigantic- involving hundreds if not thousands of pages and many, many different documents.

12. At first, I was concerned about turning over private confidential financial, business and personal information and documents to Mr. Stewart, which delayed my turning over these documents to Attorney Rosen, but ever since the confidentiality agreement was entered during or about mid-August of 2020, I did not delay in turning over whatever I found that was requested by Mr. Stewart- it was a matter of locating everything- there was a lot to locate.

13. In late October, 2020, Attorney Rosen provided me with a chart to obtain additional records for Mr. Stewart- I had one week to locate and turnover those records; I immediately made it my priority to find those records- which priority lasted the entire week.

14. During the week, my young daughter took ill and was hospitalized- I believe she remained in the hospital for five (5) days- this did affect my ability to work each day full-time to attempt to locate more information and documents.

15. I believe I gave Attorney Rosen each and everything off of that chart- except for information relating to trademarks filed, which information Attorney Rosen told me was no longer requested by Mr. Stewart's attorneys.

16. I also had trouble logging into my emails remotely, which delayed gathering emails and forwarding them to Attorney Rosen- I recall that for a period of approximately 10 days total, I was locked out from seeing my emails because I kept putting in the wrong password- which I had forgotten- this too delayed my gathering the information and documentation.

17. The most prudent way to get large volumes of emails, text messages and documents to Attorney Rosen was through google drive, which was forwarded to Attorney Rosen- prior efforts to forward large batched of emails and texts and documents proved unsuccessful.

18. I am not very good with computers or "tech" stuff, and I was unaware about certain search techniques that help find emails- once I became familiar with search tips- I was able to locate emails that I was unable to locate previously- and promptly turned them over to Attorney Rosen.

19. I also hired a third party to show me how to gather and transfer the information and/or documents requested.

20. I have no reason to hide any documents or information because it is my feeling that the more that the Court knows, the more information and documents are out there, the more it will be seen that the plaintiff is not being up front about what went on between him and me; there is nothing to hide- except for confidential private information and documentation that I hope will remain confidential as the Court Order provides. Part of the reason it took so long to locate everything is because Mr. Stewart waited more than 5 years to sue me- documents and information was lost, stored away, and difficult to locate.

21. The above is true and correct, to the best of my knowledge, information and belief.

Dated: November 20, 2020

David Feldman, Sr.