**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Edward Stewart

   vs.

David Feldman, *et al.*

Civil Action
No. 20-776

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS**

After yet another court order, Defendants still have not produced written discovery responses as this Court ordered them to do by November 20. Given that counsel still has not responded to each discovery request per Rule 34(b)(2) and asserted directly that Defendants have complied, Plaintiff has no idea whether Defendants have even today produced all responsive records.

Despite Defendants' assertion that they produced everything *two months ago*, they produced thousands more pages of documents—in Defendants' words, "additional enormous documents," (Doc. 70 at 4)—since the last discovery conference on October 22. In their most recent filing, they try to paint a concocted picture of compliance despite that false representation. They do so by misrepresenting the tortured course of discovery. The truth, not their misleading and inaccurate version of events, shows that sanctions are proper.

In September, Defendants asserted that they had "turned over all documents currently in their possession." (Doc. 51 at ECF-4 to ECF-5). The undersigned did not understand how that could possibly be true based on the apparent gaps in production and Defendants' failure to provide written discovery responses attesting to compliance. By brief of September 28, Plaintiff sought sanctions and to compel production. (Doc. 52). In doing so, Plaintiff provided a chart of the documents that Plaintiff's counsel believed must exist despite Defendants' claim that they had produced everything.

Defendants vigorously opposed the sanctions motion, again arguing in a brief on October 5 that they had "satisfied all discovery requests." (Doc. 59 at ECF-7). They had the benefit of

Plaintiff's chart when they again asserted compliance.

After an October 22 discovery conference, this Court ordered Defendants to provide written responses to Plaintiff's discovery requests that would substantiate their claim that they had produced everything. Importantly, there was no separate order to compel additional document production, presumably because Defendants told this Court in their filings that they had already produced all responsive documents.

Now, after that and a month after claiming that they produced everything, Defendants have produced thousands pages more responsive documents. Defendant David Feldman's supporting affidavits indicate that he only just now looked for responsive records in any number of places. (Doc. 70-2 at ¶¶ 4, 9–10, 16–19). Defendants offer no explanation of why it was acceptable for them to take over *five months* to find these documents only after five separate court orders, or why they falsely asserted that they had produced everything in September.

Instead, ignoring their false claim of compliance, they reimagine the past. Now, according to Defendants, they were under no obligation to provide the relevant records until just now. Supposedly, Defendants needed the undersigned's chart of what documents he guessed Defendants were withholding before they could produce them. Supposedly, they acted reasonably by providing them only after the undersigned guessed that they existed in a motion for sanctions and only after this Court's *fifth* discovery order. *E.g.* (Doc. 70 at ECF-4) ("Defendants vehemently argue that it would be imprudent for defendants to be sanctioned at all because they produced everything asked for at the 10/22 status conference.").

Defendants' argument makes no sense on either the facts or the law. On the facts, Plaintiff provided the chart in a court filing on *September 28*. There was no reason for Defendants to wait until this Court ordered them to look at the chart on October 22. Defendants could have known what

Plaintiff wanted all the way back in May by reading his discovery requests. They should not have need the prompting of repeated motions for sanctions and this Court's order. On the law, Defendants were initially obligated to produce all of the documents in *June* because Plaintiff propounded his requests on May 25. Defendants' discovery obligations are triggered by the propounding of discovery requests. Defendants cannot wait until Plaintiff is forced to file repeated sanctions motions against them before they start looking for documents.

Defendants are supposed to make sure they comply with their discovery obligations. It is not opposing counsel's job to scrutinize their production to determine whether they falsely told this Court that they complied. Plaintiff and this Court are supposed to be able to rely on a representation of compliance. But we could not. Accordingly, evidentiary and monetary sanctions are proper.

As to monetary sanctions, Defendants try to distort the issues at stake and focus on how they provided documents within a day of the expiration of the deadline of this Court's October 22 order. But this Court rightfully assumed that Defendants had already produced all of the documents because they asserted that they had done so in September. This Court was not giving them even more time to produce responsive documents. This Court instead ordered Defendants to provide written discovery responses in compliance with Rule 34(b)(2).

Defendants apparently took this order as permission for yet more time to produce documents even though they said two months ago that they produced everything But this Court's order simply gave them seven days to provide written *discovery responses*, not the underlying documents which they had already claimed to have produced.

Accordingly, fees are proper under Rule 37(a)(5)(A). It requires a fee award when a party fails to obey discovery orders unless the party was "substantially justified" or an award would be unjust. Here, Defendants offer no valid justification for their dilatory conduct. Nor would an award be

unjust where Defendants defied their obligations, falsely represented compliance, and failed to search for documents until after repeated sanctions motions. Instead, justice demands an award of fees to remedy Defendants' stonewalling and improper tactics that forced Plaintiff to incur entirely unreasonable fees just to get basic document production.

As to evidentiary sanctions, Plaintiff offers the following responses to Defendants' discussion of the *Poulis* factors.

*Defendants' personal responsibility*. Defendant David Feldman's affidavit indicates that he did not provide all responsive documents within the time required because it was a lot of work to find them. (Doc. 70-2 at ¶¶ 4, 9–10, 16–19). But that is an admission of personal fault. It was his job to find the documents. If some request were unduly burdensome, his counsel could have maintained an objection. He did not. Instead, his counsel falsely asserted compliance when he had not bothered to take basic steps, like searching for responsive emails. It was only after repeated discovery motions that he apparently began to look for many responsive documents. *See* (Doc. 70-2 at ECF-2 to ECF-3, ¶¶ 10, 13, 15, 18).

*Prejudice*. Plaintiff was prejudiced because Defendants falsely claimed compliance with their discovery obligations despite withholding thousands of pages of documents, including emails that directly bear on Plaintiff's theory of the case that Defendants cut him out by forming new entities instead of giving him the value of his investment.

In saying that there was no prejudice, Defendants are living in an Alice-in-Wonderland world. To Defendants, they do not have to actually look for documents and provide them. Instead, they can represent that they produced everything even if that is not true. Then, when they get caught, they can say: "sure, I didn't give them to you, but I hadn't bothered to look for them yet so they weren't in my 'possession.'" (Doc. 70 at 8) ("[D]efendants did not make false representations, it has always been

– 4 –

defendants' position that he was turning over everything he had in his possession, when the documents were located or when they came into defendants' possession.").

This argument is absurd. A party must produce documents in their "possession, custody, or control." FED. R. CIV. P. 34(a)(1). That includes not only physical possession, but also any document that the party has the "legal right to obtain . . . on demand." *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004). Parties cannot say that they lack "possession" of a document because of their own obstinate refusal to look for it and then lead the opposing party astray by asserting compliance with their discovery obligations based on that deception.

*History of dilatoriness*. Defendants appear to assert that they were not dilatory because they provided some documents to Plaintiff. But they have failed to comply with *five* separate orders of this Court, most recently by failing to provide written discovery responses for no apparent reason. Plaintiff has no idea how Defendants can believe that they were not dilatory.

*Bad faith*. Defendants ignore that they *falsely represented compliance with their discovery obligations*. Defendants did not say they needed more time than the five months that this Court allowed given how supposedly difficult it was to look for documents. Instead, they claimed compliance and failed to provide written discovery responses, requiring more discovery motions than any case should ever need. Defendants now try to wave their hands and hope that this Court ignores their false representation. This Court should not do so.

In addition, it is almost impossible to imagine how or why it should have taken Defendants over five months to provide responsive documents if they were acting in good faith. At every step, Defendants have refused to comply with their discovery obligations. They decided to shape up, slightly, only on the verge of evidentiary sanctions. It was only after this Court's most recent order that Defendants even performed basic searches for emails. (Doc. 70-2 at ¶ 18).

Defendant David Feldman's explanation that he is not "tech" savvy, (Doc. 70-2 at ECF-3, ¶ 18), would have been a fine explanation back in June. The undersigned would have been happy to allow more time. But it is not a credible explanation of Defendants' failures *six months* after Plaintiff propounded discovery requests and after repeated sanctions motions.

*Meritoriousness of Plaintiff's claim.* Defendants do not challenge Plaintiff's statement of the law that a claim is meritorious if it is adequately pled. This Court has already so ruled, and so there is nothing to discuss.

Instead, Defendants for the umpteenth time explain why they disagree with Plaintiff's theory of the case in justifying their conduct in discovery. Plaintiff need not address that because it is legally irrelevant. However, it is telling that Defendants' response admits that: (1) Plaintiff invested $250,500; (2) once Plaintiff was unwilling to invest more, David Feldman located new investors and formed "new companies" to run the business. (Doc. 70-1) (chart); (Doc. 70-2 at ¶ 11).

Even if Plaintiff had to prove his claim with evidence to get discovery sanctions, which he does not, Defendants' admissions alone are enough. Defendants took $250,500 from him, gave him essentially nothing in return, and then formed new entities to cut him out once the business began to work. To suggest that Plaintiff has no claim despite these undisputed facts is absurd.

In sum, Plaintiff asks this Court to enter monetary and evidentiary sanctions.

        Respectfully submitted,

        */s/ Daniel J. Auerbach*
        Daniel J. Auerbach (PA I.D. No. 316856)
        1500 John F. Kennedy Blvd., Suite 1203
        Philadelphia, PA 19102
        (215) 567-1486
        dan@gamburglaw.com

Dated: November 23, 2020